ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| FRANKLIN CREDIT MANAGEMENT CORPORATION, COMO AGENTE DE SERVICIO DE BOXCO CREDIT X, LLC<br><br>Parte Apelada<br><br>v.<br><br>FÉLIX DANIEL RODRÍGUEZ SCHMIDT T/C/C FÉLIX RODRÍGUEZ SCHMIDT, ET. AL.<br><br>Parte Apelante | TA2026AP00183 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2019CV02225<br><br>Sala: 702<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 12 de marzo de 2026.

Compareció ante este Tribunal la parte apelante, el Sr. Félix Daniel Rodríguez Schmidt, la Sra. Wanda Marie Gandrone Godreau y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en adelante y en conjunto, "Rodríguez-Gandrone" o "Apelantes"), mediante recurso de apelación presentado el 19 de febrero de 2026. Nos solicitaron la revocación de la *Sentencia Sumaria* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, "TPI"), el 16 de enero de 2026 y notificada el 20 de enero del mismo año. Mediante el referido dictamen, el foro apelado declaró "Ha Lugar" la "**Solicitud de Sentencia Sumaria**" presentada por Franklin Credit Management Corporation como Agente de Servicio de Bosco Credit X, LLC (en adelante, "Franklin Credit" o "Apelada"). En consecuencia, se declaró "Ha Lugar" la "**Demanda**" presentada y desestimó, con perjuicio, una reconvención instada por los Apelantes.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia Sumaria* apelada.

**I.**

El 18 de junio de 2019, se presentó una "**Demanda**" en contra de los Apelantes sobre cobro de dinero y ejecución de una hipoteca que grava una propiedad inmueble ubicada en el Municipio de Caguas. Se alegó que el 19 de mayo de 2009, Rodríguez-Gandrone suscribió un pagaré con garantía hipotecaria por la cantidad de $365,077.89, más un interés anual a razón del 5.785%. Añadió que, el último pago de los Apelantes se realizó el 1 de abril de 2018.

Luego de varios trámites procesales, el 20 de agosto de 2019, el foro primario refirió a las partes al proceso de mediación compulsoria en el Centro de Mediación de Conflictos para cumplir con los trámites dispuestos en la Ley Núm. 184-2012, conocida como la "Ley para la Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipoteca de una Vivienda Principal", 32 LPRA sec. 2881 *et seq.* (en adelante, "Ley Núm. 184-2012"). Posteriormente, el 9 de diciembre de 2019, el Centro de Mediación de Conflictos concluyó su participación dado a que una de las partes desistió del procedimiento.

Nuevamente, el 27 de agosto de 2021, el TPI refirió a las partes al Centro de Mediación Compulsoria. Consecuentemente, el 4 de marzo de 2022, se devolvió el caso al foro de instancia y mediante la "**Moción Informativa sobre Resultado de Caso de Ejecución de Hipoteca Atendido Mediante Servicio de Video Conferencia Intramuros de los CMC**" (en adelante, "Moción Informativa") se certificó que conforme a la Ley Núm. 184-2012, las partes participaron del proceso de mediación, pero no lograron un acuerdo.

Posteriormente, el 21 de marzo de 2022, los Apelantes presentaron una "**Moción Solicitando se Continúen los Procedimientos y Segunda Moción de Desestimación**". Mediante ésta, señalaron que la Apelada se cruzó de brazos y rechazó la evaluación de su solicitud de modificación. Agregaron que Franklin Credit se negó a cumplir con el requisito de buena

fe en el proceso de mediación compulsoria, al ofrecer una alternativa de pago que le resultaba imposible de cumplir.

Así las cosas, el 22 de abril de 2022, Franklin Credit presentó su "**Moción en Cumplimiento de Orden y Oposición a Segunda Moción de Desestimación de la Demanda y Solicitud de Orden al Centro de Mediación de Conflictos**". Mediante la misma, detalló varias comunicaciones entre las partes que incluyeron aquellas realizadas durante la primera vista de mediación compulsoria. Entre las orientaciones efectuadas, se discutió sobre el *Loss Mitigation, Short-Sale*, dación en pago, *Pay-off Balance* y *Reinstatement Balance*. Especificó que, para la segunda vista ante el Centro de Mediación, se le explicó a los Apelantes sobre el plan de pago aprobado. Señaló que los Apelantes insistían en la alternativa de modificación del préstamo. Por último, Franklin Credit destacó que el propósito de la mediación compulsoria es que se le ofrezca al deudor todas las alternativas disponibles para la retención de su vivienda principal, más no implica que las partes deban llegar a un acuerdo. Así pues, afirmó que cumplió con los requisitos establecidos en la Ley Núm. 184-2012.

A la luz de lo anterior, el 12 de enero de 2023,[1] el TPI celebró una vista en la cual discutió las mociones presentadas por las partes. Analizada la postura de ambas partes, el foro primario ordenó la celebración de una vista evidenciaria para auscultar si Franklin Credit actuó de buena fe en el proceso de mediación compulsoria, conforme al ordenamiento jurídico vigente.

Tras varias incidencias procesales, la referida vista evidenciaria se celebró el 7 de abril de 2025. Consecuentemente, el TPI emitió una *Resolución* el 15 de mayo de 2025 y notificada 21 de mayo de 2025, en la cual determinó que no se evidenció que Franklin Credit actuara de mala fe en los procedimientos. Al contrario, el foro *a quo* concluyó que la prueba presentada por los Apelantes a lo único que apuntó fue a la disconformidad de éstos con la alternativa de mitigación de pérdidas aprobada, conforme

---

[1] Véase Minuta emitida el 17 de enero de 2023, Entrada 105 de SUMAC.

con la documentación sometida y que no constituía ausencia de buena fe. En consecuencia, se declaró "No Ha Lugar" la solicitud de desestimación presentada por Rodríguez-Gandrone y ordenó la continuación de los procedimientos. Dicha determinación fue objeto de un recurso de *certiorari* presentado ante un panel hermano de este Tribunal, bajo el caso núm. TA2025CE00129. Luego de evaluados los méritos del mismo, el 29 de agosto de 2025, se emitió *Resolución* por medio de la cual se denegó la expedición del auto solicitado, lo anterior, por entender que el foro apelado no incurrió en error o abusó de su discreción al adjudicar la controversia.

Posteriormente, el 2 de octubre de 2025, Franklin Credit presentó una "**Solicitud de Sentencia Sumaria**" en la cual alegó que no existía controversia que impidiera la disposición del caso por la vía sumaria. Argumentó que era el tenedor del pagaré hipotecario y a la fecha de su presentación, los Apelantes adeudaban $347,612.15 imputables al principal; $154,868.35 por los intereses acumulados, los cuales continuaban aumentando a razón del 5.875% anual hasta el pago de la deuda; $8,587.70, por conceptos de demoras, los cuales continuaban en acumulación a razón del 5% por los pagos con atrasos en exceso de 15 días de la fecha de vencimiento; $39,104.78 por concepto de *Escrow*;[2] $5,096.44 por concepto de *Deferred Interest*; y, $36,000.00 por concepto de costas, gastos y honorarios de abogado. Ese mismo día, Rodríguez-Gandrone presentó una solicitud de inhibición en contra del juzgador que presidía los procedimientos.

Por su parte, los Apelantes presentaron su "**Oposición a Moción de Sentencia Sumaria**" el 25 de noviembre de 2025. Sostuvieron que existía una controversia de hechos, toda vez que solicitaron una modificación del préstamo hipotecario y no un plan de pagos de naturaleza leonina. Sobre la cantidad adeudada, cuestionaron la misma en virtud de que no habían podido contrainterrogar al responsable de hacer el cálculo o revisar por sí mismo los cómputos presentados. Establecieron que el debido proceso de

---

[2] El desglose incluye una disminución de $2,931.12 por concepto de *Restricted Escrow* o *Loss Draft Balance*.

ley requería que el caso fuera dilucidado a través de una vista en su fondo y no por medio de una moción de sentencia sumaria. Insistió en que Franklin Credit no presentó su alegación responsiva a la reconvención presentada el 21 de septiembre de 2019, cuyo efecto fue que no se negaron las defensas afirmativas que fueron invocadas. Del mismo modo, argumentaron que la Apelada no era tenedora de buena fe del pagaré hipotecario en controversia, ya que adquirió el instrumento con pleno conocimiento de que existía un pleito pendiente. Explicaron que desde el comienzo del pleito expresaron su interés de retener la propiedad mediante una modificación del préstamo hipotecario. Sin embargo, adujeron que la Apelada, unilateralmente, realizó un plan de pagos que éstos no solicitaron. Finalmente, reiteraron la ausencia de buena fe en los procesos de mediación compulsoria. Entretanto, el 8 de diciembre de 2025, el TPI emitió una *Resolución* mediante la cual denegó la solicitud de inhibición presentada por los Apelantes.

Más tarde, el 15 de diciembre de 2025, Franklin Credit presentó una "**Réplica a Oposición a Solicitud de Sentencia Sumaria**", en la cual sostuvo que los Apelantes fallaron en lograr controvertir los hechos materiales consignados en su petición. Argumentó que los planteamientos sobre la buena fe del acreedor fueron atendidos mediante la vista evidenciaria celebrada el 7 de abril de 2025, cuya determinación advino final y firme, por lo que constituía la ley del caso. Señaló que los Apelantes no presentaron evidencia que apoyara aquellos hechos a los cuales se oponían o alegaban que estaban en controversia. Por último, sobre la reconvención, indicó que el 4 de junio de 2021, se presentó una solicitud de desestimación sobre la misma.

Analizados los planteamientos de las partes, el TPI emitió una *Sentencia Sumaria* el 16 de enero de 2026 y notificada el 20 de enero de 2026, en la que declaró "Ha Lugar" la moción dispositiva instada por Franklin Credit. En la misma, consignó que los Apelados incumplieron con los pagos establecidos por la institución bancaria desde el 1 de abril de 2018. Especificó que el matrimonio Rodríguez-Gandrone no presentó

ningún tipo de evidencia que demostrara que realizó los pagos reclamados, por lo que la deuda estaba vencida y líquida y era exigible. Resaltó que éstos se limitaron a establecer su solicitud para retener la vivienda, más no apelaron o solicitaron una reconsideración sobre la opción de plan de pago. Es decir, solo se demostró su inconformidad con la alternativa de mitigación de pérdidas para la cual cualificó en virtud de los ingresos y gastos reportados. Finalmente, en cuanto a la reconvención, resolvió que la misma no se sostenía en derecho ni en los hechos del caso. Como consecuencia, desestimó, con perjuicio, la reconvención instada por los Apelantes.

Específicamente, el foro a quo detalló como incontrovertidos los siguientes hechos medulares:

1. Con anterioridad a la radicación de la Demanda, la parte demandada sometió documentación para la evaluación de una alternativa de mitigación de pérdidas (Programa de Asistencia Hipotecaria) con Scotiabank de Puerto Rico (Scotiabank), antecesor en derecho de la parte demandante.

2. En fecha 10/04/2018 Scotiabank le cursó una comunicación a la parte demandada en la que notificó, entre otros, lo siguiente: "Basado en una revisión preliminar de la información suministrada, entendemos toda la información ha sido recibida. Cabe recalcar que, según su paquete financiero sea evaluado para determinar el programa de asistencia más adecuado para usted, información adicional puede ser requerida."

3. Dicho caso fue cancelado por Scotiabank mediante comunicación de 11 de marzo de 2019 por documentación y requisitos incompletos.

4. Una vez presentada la Demanda en el caso de autos, el Tribunal hizo un primer referido al Centro de Mediación de Conflictos (CMC) para que se llevara a cabo el proceso de mediación compulsoria de conformidad con las disposiciones de la Ley 184-2012 mediante Orden de 20 de agosto de 2019, notificada el 26 de agosto de 2019.

5. Según informado por el CMC mediante moción el 9 de diciembre de 2019, la sesión de mediación compulsoria se llevó a cabo el 5 de diciembre de 2019 y: (1) ambas partes comparecieron al proceso; (2) el acreedor no brindó la orientación requerida por la Ley 184-2012; (3) porque una de las partes dio por terminada su participación antes de completar la mediación.

6. El 18 de agosto de 2021, como parte de las incidencias de una vista celebrada, la parte demandada alegó que no se había llevado a cabo la vista de mediación compulsoria y solicitó que se continuara con la misma por alegados cambios en su situación económica.

7. El 27 de agosto de 2021, notificada el 1 de septiembre de 2021, el Tribunal emitió Orden refiriendo el caso al CMC por entender que las partes podrían beneficiarse del proceso.

8. A la fecha del nuevo referido al CMC, se había autorizado la sustitución de la parte demandante tras haberse efectuado la cesión de la facilidad de crédito.

9. El 4 de marzo de 2022, el CMC presentó moción informativa en la que le certificó al Tribunal que ambas partes participaron de la sesión de mediación, pero no lograron acuerdo.

10. El Sr. Rodríguez Schmidt testificó que, como parte de los procedimientos del segundo referido al proceso de mediación compulsoria, la parte demandante le orientó sobre las alternativas de retención y disposición en mitigación de pérdidas.

11. El Sr. Rodríguez Schmidt también testificó que la parte demandante le informó sobre los documentos que debía presentar para que su solicitud de mitigación de pérdidas fuera evaluada.

12. La parte demandada sometió una Solicitud de Mitigación de Pérdida para la Propiedad Principal del Deudor (Loss Mitigation Application) con fecha de 28 de diciembre de 2021.

13. De dicha solicitud surge que la parte demandada estaba interesada en una alternativa que le permitiera conservar la propiedad.

14. Entre los documentos acompañados por la parte demandada en su solicitud de mitigación de pérdidas, se encuentran aquellos acreditativos de su capacidad económica y una relación de ingresos y gastos.

15. Luego de evaluada la información sometida por la parte demandada, el 28 de enero de 2022, la parte demandante envió una comunicación a la parte demandada en la que se le informó que había cualificado para un plan de pago. Dicha comunicación dispone, entre otros, lo siguiente: Nos complace informarle a nombre del propietario de la hipoteca, Bosco Credit X, LLC, used(es) ha(n) cualificado para un Plan de Pago. El propietario ha establecido un sistema de clasificación para evaluar las opciones de mitigación de pérdidas y usted ha sido aprobado para una opción en ese sistema. La aprobación de una opción de mitigación de pérdidas da como resultado la denegación de otras opciones de mitigación de pérdidas clasificadas por debajo de la opción que usted ha sido aprobado. Énfasis en el original.

16. La parte demandada no estuvo de acuerdo con la alternativa de mitigación de pérdidas aprobada.

17. La parte demandada no presentó una apelación contra la determinación de la parte demandante sobre la alternativa de mitigación de pérdidas aprobada a pesar de haber sido notificada de su derecho a hacerlo.

18. Las direcciones conocidas de la parte demandada son las siguientes: FÍSICA:4-A Caguas Real Home Resort, Calle Alcázar, Caguas, PR 00725 y POSTAL: Urb. Caguas Real 104, Caguas, PR 00725-9050.

19. La parte demandada solicitó a Scotiabank de Puerto Rico, un préstamo hipotecario originalmente por la suma de $417,000.00, finalmente la transacción se formalizó por la suma de $360,000.00.

20. Como parte de la solicitud de préstamo, la parte demandada autorizó a Scotiabank a verificar información sobre sus ingresos y crédito.

21. Además, entregó una serie de documentos, entre ellos, los relacionados a su información financiera y a los ingresos que generaba.

22. En el proceso de evaluación, Scotiabank gestionó una serie de documentos, entre ellos, la tasación de la propiedad objeto de este procedimiento.

23. El bien inmueble sobre el cual surge el derecho o interés objeto de esta acción ubica en el Municipio de Caguas.

24. El 19 de mayo de 2009, la parte demandada suscribió un pagaré a favor de Scotiabank de Puerto Rico o a su orden, por la suma principal de $360,000.00 más intereses desde esa fecha hasta el pago total del principal a razón de 5.875% de interés anual sobre el balance adeudado y vencimiento el 1ro de junio de 2014, autenticado en la misma fecha, mediante testimonio número 8221 ante la Notario Luz N. Solero Santiago.

25. Además, el pagaré provee para pagar recargos por demora equivalentes a 5% de la suma de aquellos pagos con atrasos en exceso de 15 días calendario de la fecha vencimiento. Asimismo, en la escritura de hipoteca, las partes pactaron la suma de $36,000.00, equivalente al 10% del principal original, para costas, gastos y honorarios de abogados en caso de reclamación judicial. Anejo 9, Escritura Número 103 sobre Primera Hipoteca.

26. En aseguramiento del Pagaré Hipotecario antes mencionado se constituyó hipoteca voluntaria, mediante Escritura Número 103, otorgada por la parte demandada el 19 de mayo de 2009, ante la Notario Luz N. Solero Santiago, sobre el bien inmueble que se describe a continuación:

URBANA: URBANIZACIÓN CAGUAS REAL HOME RESORT de Caguas. Solar: A-4. Cabida: 1,244.016 Metros Cuadrados. Linderos: NORTE, distancia de 53.33 metros, con el solar número 5 del bloque A. SUR, distancia de 56.065 metros, con el solar número 3 del bloque A. ESTE, distancia de 24.004 metros, con la calle número 2. OESTE, distancia de 21.53 metros, con el Campo de Golf. En dicho solar enclava una casa, construida en concreto y bloques de hormigón para fines residenciales, la cual consta de cuatro cuartos dormitorios, tres y medio baños, doble marquesina, sala, comedor, cocina, "family room", terraza y demás dependencias.

Se halla afecto este solar a una Servidumbre Telefónica: Faja de terreno de 1.52 metros de ancho por 20.004 metros de largo por su colindancia Este. Servidumbre Pluvial con un área de 69.074 metros cuadraros. Tiene un área de talud de 313.561 metros cuadrados.

Inscrita al Tomo Karibe de Caguas, Registro Inmobiliario Digital del Estado Libre Asociado de Puerto Rico, Primera Sección de Caguas, Finca número 63,814. 27.

27. La hipoteca descrita en el apartado anterior se encuentra inscrita al Tomo Karibe de Caguas, del Registro Inmobiliario Digital del Estado Libre Asociado de Puerto Rico, Primera Sección de Caguas, inscripción 5ta.

28. Como parte del proceso de evaluación y formalización del préstamo hipotecario objeto de este procedimiento, Scotiabank entregó a la parte demandada las divulgaciones requeridas para este tipo de transacción, entre ellas: 1) Federal Truth-In-Lending Disclosure Statement, 2) Settlement Statement, 3) Divulgaciones de Seguros al Cliente - en relación con la extensión de crédito, 4) Programa de Control de Calidad, Certificación y Autorización, 5) Initial Escrow Account Disclosure Stetement, 6) Acuse de recibo y Tabla de Amortización, 7) Carta de Relevo de Contribuciones General, 8) Acuerdo y Relevo de Responsabilidad CRIM, 9) Validation of Identify, 10) First Payment Letter, 11) Good Faith Estimate, 12) Federal Truth-In-Lending Disclosure Statement, 13) Derecho a recibir copia del informe de tasación, 14) Acknowledgment and Release, 15) Affiliated Business Arrangement Disclosure Statement Format Notice, 16) Datos Importantes sobre las hipotecas "NO TRADICIONALES", 17) Divulgaciones de Seguros al Cliente - antes de completarse la transacción de seguros, 18) Divulgaciones de Seguros al Cliente, en relación con la extensión de crédito, 19) Acuse de recibo de varios documentos, 20) Good Faith Estimate, 21) Federal Federal Truth-In-Lending Disclosure Statement, 22) Listado de Proveedores de Scotiabank de Puerto Rico. 23) Credit Score Disclosure, 24) Servicing Diclosure Statement, 25) Privacy Policy Notice, 26) Primera página del brochure "Buying your Home", 27) Equal Opportunyty Act Notice, Notificacion de "E.C.O.A.", Notice to Applicant Rigth to Financial Privacy Act, Notificación al Solicitante sobre la Ley de Derecho a Privacidad Financiera de 1978, y 28) CREDCO Instant Merge Credit Report fechado el 2/9/2009.

29. El 30 de junio de 2015, la parte demandada y Scotiabank, otorgaron ante la Notario Ana E. Gorbea Padró, la Escritura Número 201 sobre Ampliación y Modificación de Hipoteca, en la cual se amplió la hipoteca de la inscripción 5ta., por la suma de $5,077.89, siendo el nuevo principal la suma de $365,077.89. De igual manera se extendió el vencimiento al 1º de agosto de 2040 y se modificó el tipo mínimo para la primera subasta en caso de ejecución a la suma de $365,077.89.

30. La modificación de hipoteca antes mencionada consta inscrita al Tomo Karibe de Caguas, del Registro Inmobiliario Digital del Estado Libre Asociado de Puerto Rico, Primera Sección de Caguas, inscripción 6ta.

31. Para la evaluación de la modificación del préstamo, la parte demandada entregó a Scotiabank varios documentos, entre ellos los relacionados con su información financiera, como "Financial Statement", Contrato de Consultoría, recibos de nómina, Estados Financieros del año 2012, planillas de Contribución sobre Ingresos para los años 2013 y 2012.

32. La parte demandada es el titular registral de la propiedad inmueble descrita en el apartado 26 anterior.

33. La parte demandada se comprometió en el contrato hipotecario a pagar las contribuciones sobre la propiedad, además de otros cargos e imposiciones atribuibles a la misma. La parte demandada tiene que ser compelida a dichos pagos o, en su defecto, mostrar la documentación que evidencie dichos pagos, o un acuerdo escrito aceptable para Franklin Credit, o, evidencia que acredite que el deudor ha impugnado los cargos o imposiciones de las agencias con jurisdicción (C.R.I.M.) sobre el inmueble dado en garantía y el cual es objeto de este pleito.

34. El último pago que la parte demandada realizó fue el correspondiente al pago vencedero el 1ro de abril de 2018, en consecuencia, ha incurrido en el incumplimiento de su obligación de pagar en plazos mensuales el principal y los intereses según acordado.

35. El 10 de enero de 2020, Franklin Credit cursó dos misivas a la parte demandada. En la primera se le notificó sobre la transferencia de su préstamo de Scotiabank a Franklin Credit efectivo el 23 de diciembre de 2020, informando también el número de préstamo asignado por Franklin Credit. En la segunda, se le notificó sobre la transferencia del administrador ("Servicer") de su préstamo de Scotiabank a Franklin Credit a partir del 13 de enero de 2020.

36. Al presente, la parte demandada no ha completado una solicitud formal ni ha realizado gestión alguna en el Departamento de Mitigación de Pérdidas de Franklin Credit encaminado a evaluar si cualifica o no para alguna alternativa de retención o disposición de la propiedad objeto de este procedimiento.

37. Franklin Credit es el actual tenedor de buena fe del pagaré objeto de la presente reclamación, habiéndolo adquirido por valor recibido y/o por endoso en el curso ordinario de sus negocios.

38. En virtud del referido pagaré que Franklin Credit tiene en su poder y la referida escritura de hipoteca, según modificados, al 31 de octubre de 2025, la parte demandada le adeuda, con relación a este caso, las siguientes sumas: $347,612.15 por concepto de principal; $154,868.35 de interés acumulados al 31 de octubre de 2025, los cuales continuarán aumentando a razón del 5.875% anual hasta el total y completo pago de la deuda; $8,587.70 de cargos por demora, acumulados al 31 de octubre de 2025, los cuales continuaran acumulándose a razón del 5% de todos aquellos pagos con atrasos en exceso de 15 días calendario de la fecha de vencimiento; $39,104.78 por concepto de "Escrow"; ( $2,931.12) por concepto de "Restricted Escrow/Loss Draft Balance"; $5,096.44 por concepto de "Deferred Interest"; $36,000.00 por concepto de costas, gastos y honorarios de abogado. Los intereses, cargos por demora, la partida de "Escrow", otros cargos, créditos accesorios, penalidades y recargos, continuarán aumentando hasta el pago total de la deuda, según pactado.

39. La parte demandada no es menor de edad ni incapaz, y conforme a las Certificaciones del Departamento de la Defensa adjunta, no sirve actualmente en las Fuerzas Armadas de los Estados Unidos.

En desacuerdo con la determinación del foro *a quo*, el 19 de febrero de 2026, Rodríguez-Gandrone presentó el recurso que nos ocupa, mediante el cual le imputó al TPI la comisión del siguiente error:

ERROR COMETIDO: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESATENDER LOS HECHOS DE ESTE CASO Y DISPONER DEL MISMO MEDIANTE EL MECANISMO DE SENTENCIA SUMARIA.

El 11 de marzo de 2026, Franklin Credit presentó su "**Alegato en Oposición**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria.

A la luz de sus disposiciones, si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3. En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". SLG Szendrey-Ramos v. Consejo de Titulares, 184 DPR 133, 167 (2011). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal.

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal tenga ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y surja claramente que la parte

promovida por el recurso no prevalecerá. Mejías *et al.* v. Carrasquillo *et al.*, 185 DPR 288, 299 (2012); PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 DPR 881, 911-912 (1994). Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168.

Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Roldan Flores v. M. Cuebas *et al.*, 199 DPR 664, 676 (2018).

Por su parte, la parte promovida por una moción de sentencia sumaria debe demostrar que existe controversia en cuanto a algún hecho material que sea constitutivo de la causa de acción del demandante. Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Roldán Flores v. M. Cuebas *et al.*, *supra*, pág. 677; Ramos Pérez v. Univisión, 178 DPR 200, 214-215 (2010).

Según las directrices pautadas por nuestro más Alto Foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la

demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005) (énfasis suplido).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este Foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitado a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Bravo, 161 DPR 308, 335 (2004)*.* De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd., págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos,

cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

**B.**

En el ámbito del derecho inmobiliario, la norma establece que la inscripción es declarativa debido a que "los derechos reales sobre inmuebles se constituyen, modifican, transmiten o extinguen, con eficacia jurídica, fuera del Registro en virtud de la aplicación de las normas del Derecho civil". L.R. Rivera Rivera, Derecho registral inmobiliario puertorriqueño, 3ra. ed., San Juan, Jurídica Editores, 2012, pág. 42. No obstante, a modo de excepción, existen casos, como son las hipotecas, en que es necesaria la inscripción para que se constituya el derecho real. DLJ Mortgage Capital, Inc. v. García Ramos, 207 DPR 28, 55 (2021). "Ello se debe a que es mediante la inscripción, como acto constitutivo, que 'la garantía produce efectos reales y adviene eficaz *erga omnes* al ámbito de los derechos reales [...]'". Haedo Castro v. Roldan Morales, 203 DPR 324, 342 (2019) (citando a Rivera Rivera, *op. cit.*, pág. 487).

El Artículo 96 de la Ley del Registro de la Propiedad, *supra*, dispone que "[e]n los casos de ejecución de hipotecas que garantizan instrumentos negociables, deberá darse cumplimiento a las disposiciones de la legislación mercantil vigente relativas al cobro de tales instrumentos". 30 LPRA sec. 6133. Conforme a ello, el Tribunal Supremo ha resuelto que la hipoteca que se constituye para garantizar instrumentos negociables o títulos transferibles por endoso o al portador le aplica la Ley Núm. 208-1995, según enmendada, conocida como la "Ley de Transacciones Comerciales", 19 LPRA sec. 401 *et seq.* (Ley 208-1995). DLJ Mortgage v. SLG Santiago-Ortiz, 202 DPR 950, 963 (2019).

Existe un pagaré cuando hay un compromiso escrito de pagar el dinero suscrito por la persona que se obliga a pagar. Soto Sola v.

Registradora, 189 DPR 653, 663 (2013). Ahora bien, en nuestro ordenamiento jurídico existen varios tipos de pagarés, los cuales dependen del momento de cuando resulten exigibles. La orden o promesa será pagadera a la presentación si: "(1) especifica que es pagadera a la presentación o a la vista o de otra forma indica que es pagadera cuando el tenedor lo exija, o (2) no especifica ninguna fecha de pago". 19 LPRA sec. 508 (a). Este tipo de instrumento se considera vencido desde que su tenedor exige el pago de la obligación. Íd. Mientras que aquéllos de fecha específica son pagaderos una vez ha transcurrido un periodo de tiempo específico desde su presentación o aceptación. Íd.

De esta manera, a partir de dicho momento, el acreedor tiene tres (3) años para exigir el cumplimiento del pago. Soto Sola v. Registradora, *supra*, pág. 665. El vencimiento significa la "[t]erminación del plazo establecido legal o convencionalmente para el cumplimiento de una obligación". Íd., pág. 666 (citando a M. Osorio, Diccionario de ciencias jurídicas, políticas y sociales, Buenos Aires, Ed. Heliasta, 1992, pág. 1004).

Ahora bien, nuestro sistema de derecho permite que estos instrumentos negociables puedan ser garantizados con una hipoteca. En ese sentido, el Artículo 91 de la Ley del Registro de la Propiedad, *supra*, establece que cuando se constituya una hipoteca para garantizar un instrumento negociable, el derecho hipotecario se transferirá con el instrumento sin necesidad de dar conocimiento al deudor. 30 LPRA sec. 6118. Además, a la hora de inscribir la hipoteca que garantice el instrumento negociable, se deberá cumplir con los lineamientos establecidos en el Art. 92 de la Ley del Registro de la Propiedad, *supra*, 30 LPRA sec. 6119. Sin embargo, conforme surge de la sección 2-118 (h) de la Ley 208-1995, *supra*, una acción para exigir el cumplimiento de una obligación de una parte de pagar un pagaré garantizado por una hipoteca sobre bienes inmuebles y todo interés devengado por tal obligación, deberá iniciarse dentro del término dispuesto en el Código Civil que regula el término para el ejercicio de la acción hipotecaria, el cual es de veinte (20) años. Es decir, tanto la acción de ejecutar la hipoteca como el término

prescriptivo del pagaré hipotecario es de veinte (20) años. Soto Solá v. Registradora, *supra*, pág. 665. Dicho término comenzará a transcurrir a partir del vencimiento la obligación hipotecaria. Íd., pág. 668.

## C.

La Asamblea Legislativa adoptó la Ley Núm. 184-2012, *supra*, con el fin de proteger la residencia principal de los deudores hipotecarios ante los efectos de la crisis económica en Puerto Rico suscitada en los años 2007 al 2009. Scotiabank v. SLG Rosario-Castro, 205 DPR 537, 547 (2020). Ésta dispone para un procedimiento de mediación compulsoria, previo a que se concrete un proceso de ejecución de hipoteca sobre dicha propiedad principal, mediante el cual se le informará al deudor aquellos remedios alternativos disponibles para mantener el bien inmueble de que se trate. Oriental Bank v. Caballero García, 212 DPR 671, 680-681 (2023). Todo ello con el propósito de "evitar la pérdida de su residencia principal y, a su vez, le provee la oportunidad de sentarse a negociar con su acreedor". Bco. Santander v. Correa García, 196 DPR 452, 461 (2016).

Durante dicho cónclave, el acreedor hipotecario deberá notificarle al deudor:

> [T]odas las alternativas disponibles en el mercado para evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal, incluyendo aquellas alternativas que no dependen de la capacidad económica del deudor, como lo son la venta corta ("short sale"), la dación en pago, entrega voluntaria de título, y otros remedios que eviten que el deudor pierda su hogar o que, de perderlo, se minimicen las consecuencias negativas sobre el deudor. 32 LPRA sec. 2881(b).

La ley puntualiza que "[el] propósito u objetivo será poder llegar a un acuerdo o modificación que permita al deudor hipotecario establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal". 32 LPRA sec. 2881 (b). Es, pues, obligación del tribunal referir el caso a mediación, porque de no hacerlo "no podrá dictarse Sentencia ni ordenarse la venta judicial del inmueble que se utiliza como residencia principal". Oriental Bank vs. Caballero García, *supra*, pág. 681. Entiéndase que cualquier sentencia dictada u orden de venta judicial emitida en contravención con lo establecido en la Ley Núm. 184 de 2012,

*supra*, será nula y carecerá de efecto legal. Bco. Santander v. Correa García, *supra*, pág. 472.

Por otra parte, el tribunal está facultado para continuar los procedimientos cuando: "(1) el acreedor acudió a la vista de mediación, pero el deudor no se presentó; (2) las partes acudieron a la vista y se cumplieron los requisitos de ley, pero no llegaron a un acuerdo, o (3) el deudor incumplió con los acuerdos contraídos como resultado del proceso de mediación". Oriental Bank v. Caballero García, *supra*, pág. 681-682. El Tribunal Supremo enfatizó que "[s]olo cuando el Tribunal de Primera Instancia se asegure de que el procedimiento de mediación compulsoria se cumplió, podrá dictar la Sentencia que proceda". Íd., pág. 685.

Para dar cumplimiento al requisito jurisdiccional de la mediación, el foro primario viene obligado a cerciorase que las negociaciones se hayan llevado a cabo con buena fe. Scotiabank v. SLG Rosario-Castro, *supra*, 557. Para cumplir con el requisito de buena fe:

> En primer lugar, las partes deben ir preparadas para negociar y llegar a un acuerdo, de ser posible. En segundo lugar, las partes deben llevar a la vista o al acto de mediación toda la documentación que requiere el proceso de mediación y cualquier otra documentación necesaria. En tercer lugar, el representante del acreedor hipotecario debe tener autoridad para llegar a un acuerdo. Finalmente, los acreedores deben proveer a los deudores todas las alternativas disponibles en el mercado, tales como la modificación del préstamo, un análisis en virtud de los programas federales Home Affordable Modification Program (HAMP) y Home Affordable Refinance Program (HARP), entre otras. Lo anterior, incluye aquellas alternativas que no dependen de la capacidad económica de deudor, como lo son la venta corta (short sale), dación en pago, entrega voluntaria de título, entre otras. Íd., págs. 557-558.

El propósito de la misma es evaluar la posibilidad de llegar a un acuerdo que sea satisfactorio para ambas partes. Íd., pág. 551. Más no se impone una obligación al acreedor para que logre un acuerdo, con miras de dar por cumplido el proceso de mediación. Íd., pág. 558. A tenor, el objetivo es notificarle al deudor sobre las alternativas disponibles en el mercado, mediante un esfuerzo real, para evitar la ejecución de la vivienda principal del deudor. Íd., pág. 559.

Particularmente, el Artículo 3 de la Ley Núm. 184-2012 dispone que si el tribunal determina "que no se actuó de buena fe en cuanto al

ofrecimiento de alternativas disponibles o la evaluación realizada al deudor y luego de haber dilucidado la controversia en vista evidenciaria, el Tribunal procederá a desestimar sin perjuicio la demanda presentada". 32 LPRA sec. 2882. En aquellos casos en los que el acreedor incumple con el requisito de buena fe y la sanción de desestimación no está disponible, corresponde que el tribunal ordene la celebración de un nuevo proceso de mediación. Scotiabank v. SLG Rosario-Castro, *supra*, pág. 558.

**III.**

Según adelantáramos, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el foro *a quo*. Al evaluar las determinaciones de hechos esbozadas por el foro primario, encontramos que los mismos no se encuentran en controversia por estar basados en evidencia documental que los sustenta. Hacemos constar que los primeros diecisiete (17) hechos incontrovertidos se encuentran fundamentados en la *Resolución* emitida el 15 de mayo de 2025, referente a la vista evidenciaria para auscultar si la Apelada actuó de buena fe durante la mediación compulsoria. Es menester recordar que esta determinación advino final y firme, por ende, constituye la ley del caso.

Ahora bien, los Apelantes nos solicitan la revocación de la *Sentencia Sumaria* emitida por el TPI, en la cual se declaró "Ha Lugar" la "**Demanda**" y, en consecuencia, ordenó el pago de las cantidades adeudadas a Franklin Credit. Advertimos, de entrada, que al analizar los planteamientos de derecho en los que los Apelantes fundamentan su recurso de apelación notamos que los mismos están dirigidos a la presunta ausencia de buena fe desplegada por el acreedor hipotecario durante el proceso de mediación compulsoria celebrado en el caso de autos. A pesar de lo anterior, y acorde con el estándar de revisión aplicable en el presente caso, analizamos la corrección del dictamen dispositivo impugnado desde el origen.

Sobre el particular, debemos mencionar que en su escrito en *Oposición a Moción de Sentencia Sumaria*, el matrimonio Rodríguez-

Gandrone se limitó a argumentar en contra de los hechos propuestos por la Apelada, sin presentar evidencia alguna que respalde su teoría. En cuanto a este respecto, es importante destacar que de todos los hechos incontrovertidos propuestos en la solicitud de sentencia sumaria que nos ocupa, solo cuatro (4) de ellos fueron impugnados por los Apelantes sin presentar prueba documental que los apoye, de conformidad con la Regla 36.3 de Procedimiento Civil, *supra*, **y se limitaron a negarlos según fueron redactados haciendo alusión a alegaciones presentadas por éstos durante el litigio**. **De hecho, expusieron unos hechos que, según su postura, tampoco estaban en controversia mas no fueron apoyados en documentación alguna**.

Su argumento principal descansa en que solicitaron una modificación de la deuda como alternativa de retención de vivienda principal. Por consiguiente, aducen que su desacuerdo con un plan de pago no solicitado es fundamento suficiente para establecer que se incumplió con el requisito de buena fe en el proceso de mediación. Agregaron que la controversia radicaba en establecer si Scotiabank cumplió con el proceso de mediación compulsoria. Por último, sostuvieron que Franklin Credit presentó una declaración jurada *self serving* para establecer la cuantía adeudada. Sobre ésta, arguyeron que no tuvieron la oportunidad de contrainterrogar al suscribiente de la declaración jurada y tampoco tuvieron la ocasión de revisar o analizar los cómputos a través de su contador.

Ante nuestra consideración, los Apelantes arguyen que el TPI erró al disponer del caso sumariamente porque en ningún momento se cumplieron las disposiciones de la Ley Núm. 284-2012, *supra*. Específicamente, sostuvieron que el foro apelado no tenía otra opción que no fuera desestimar la "**Demanda**". Esto porque nunca se arribaron a un acuerdo satisfactorio para ambas partes. Veamos.

Es norma claramente establecida en nuestro ordenamiento jurídico que procede dictar sentencia sumaria si conforme a la evidencia presentada, no existe controversia real y sustancial en cuanto a algún hecho esencial y pertinente del caso. 32 LPRA, Ap. V, R. 36.3. Un hecho

material es aquel que tiene el potencial de impactar el resultado de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 7. Así pues, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia. Oriental Bank v. Caballero García, *supra*, pág. 7. Esto es, un tribunal no puede disponer de un caso por la vía sumaria cuando existan hechos fundamentales controvertidos. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Por su parte, la parte promovida por una moción de sentencia sumaria debe demostrar que existe controversia en cuanto a algún hecho material que sea constitutivo de la causa de acción del demandante. Oriental Bank v. Perapi *et al.*, *supra*. Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, *supra*. No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Roldán Flores v. M. Cuebas *et al.*, *supra*, pág. 677.

Los autos reflejan que los Apelantes no refutaron los hechos materiales que Franklin Credit entiende que no están en controversia. El documento presentado se limitó a argumentar sobre cuatro (4) de los cuarenta (40) hechos presentados en la *Solicitud de Sentencia Sumaria*. La única controversia traída ante nos en el recurso de los Apelantes es referente a la actuación de Scotiabank en el primer referido de mediación. Entiéndase, su única controversia gira en torno a una institución bancaria que ya no es parte en el pleito. Situación que fue subsanada mediante un segundo referido al Centro de Mediación de Conflictos con la parte involucrada, Franklin Credit.

Por otro lado, nótese que los Apelantes utilizaron una declaración jurada del señor Rodríguez Schmidt para negar el cómputo de lo adeudado por falta de investigación o verificación de su parte, sin evidencia adicional. Siendo así, éstos no controvirtieron la prueba presentada y descansaron en meras afirmaciones contenidas en sus alegaciones de la reconvención.

Así pues, luego de analizados los documentos anejados por Franklin Credit a su moción de sentencia sumaria, concluimos que no existe controversia sustancial que impida la adjudicación sumaria del caso ante nos y, por tanto, acogemos como nuestros los hechos detallados en la *Sentencia Sumaria* como nuestros para propósitos adjudicativos.

No obstante lo anterior, al analizar los planteamientos de derecho que los Apelantes esbozaron en su recurso de apelación, observamos que ninguno busca cuestionar los hechos que el foro primario estableció como incontrovertidos en la *Sentencia Sumaria* apelada, puesto que se fundamentan en la alegada ausencia de buena fe durante el proceso de mediación celebrado. Entiéndase, la controversia que venimos compelidos a adjudicar está cimentada en determinar si el foro primario aplicó el derecho de manera correcta.

En los casos de ejecución de hipoteca de la propiedad principal, es un requisito jurisdiccional que las partes acudan a un proceso de mediación compulsoria. Es imperativo que en esta reunión se le ofrezcan al deudor hipotecario todas las alternativas disponibles en el mercado para retener su vivienda principal. Entiéndase, el simple hecho de que "las partes comparezcan a una vista de mediación y no lleguen a un acuerdo, sin más, no es suficiente para determinar que el proceso de mediación culminó infructuosamente". Oriental Bank v. Caballero García, *supra*, pág. 684. Los tribunales deben asegurarse de que la mediación compulsoria se llevó a cabo conforme a la Ley Núm. 184-2012. Íd. Ello incluso aunque las partes no alcancen un acuerdo. Íd. La disposición legal también requiere que las partes actúen de buena fe durante las negociaciones. Su omisión tiene el efecto de privar al tribunal de jurisdicción para atender la controversia. Scotiabank v. SLG Rosario-Castro, *supra*. Nótese que el hecho de que las partes no hayan llegado a un acuerdo no hace, sin más, que se invalide el proceso de mediación, siempre y cuando el acreedor hipotecario les brinde a los deudores la orientación requerida por la Ley Núm. 184-2012, *supra*, sobre todas las alternativas de retención de la propiedad disponibles. El objetivo es que se realice un esfuerzo real que evite la ejecución de la

vivienda principal del deudor y que el acreedor hipotecario muestre, con ello, que actuó de buena fe durante el proceso.

El matrimonio Rodríguez-Gandrone sostiene que la disposición del caso no tomó en consideración el derecho vigente. Plantearon que, en el primer proceso de mediación, se culminó la intervención del Centro de Mediación de Conflictos por el desistimiento voluntario de una de las partes. Estableció que el único curso de acción viable para el TPI era desestimar, sin perjuicio, la causa de acción. Sobre el segundo referido al Centro de Mediación, argumentó que, si bien las partes no lograron un acuerdo, no es menos cierto que el proceso resultó inconcluso. Precisó que ello se debe a que Franklin Credit no realizó la evaluación de rigor para cualificar u ofrecer alguna alternativa de retención de su vivienda principal.

Tras un análisis del tracto procesal, los escritos presentados por las partes y la evidencia que obra en el expediente, resolvemos que el foro primario no erró en su determinación.

Ciertamente, el segundo proceso de mediación no quedó inconcluso como la parte apelante pretende establecer. Según la *Moción Informativa* presentada por el Centro de Mediación de Conflictos, el caso concluyó "Sin Acuerdo (Ambas partes participaron de la sesión de mediación, pero no logaron acuerdo)". Es decir, el Centro de Mediación informó que las partes completaron el proceso sin un acuerdo. Ahora bien, según adelantado en los acápites anteriores, ello, sin más no es un resultado inconcluso; ni mucho menos es un indicador de que el acreedor hipotecario no actuó de buena fe como para que se justifique la desestimación del caso.

Surge del expediente ante nos que Franklin Credit cumplió con orientar a los Apelados sobre las alternativas disponibles. Según consta en los autos, en este caso se llevaron a cabo dos (2) vistas de mediación, a saber: el 20 de diciembre de 2021 y el 3 de febrero de 2022. De igual forma, en la moción presentada por la Apelada, el 22 de abril de 2022 se incluyeron las comunicaciones dirigidas a los Apelantes con el propósito de completar su solicitud de mitigación de pérdidas. Luego de ser debidamente evaluados, a la luz de una petición que se limitó a la retención

de la vivienda, los Apelantes cualificaron para un plan de pago conforme a los ingresos y gastos reportados. No obstante, el matrimonio Rodríguez-Gandrone insiste en que esta conducta es constitutiva de mala fe durante el proceso de mediación.

Somos de la opinión que el desacuerdo con la alternativa disponible no es suficiente para establecer que se incumplió con el requisito jurisdiccional de buena fe. Más aun cuando el foro de instancia celebró una vista evidenciaria a los fines de esclarecer si, en efecto, hubo ausencia de tal requisito. En la *Resolución* emitida por el TPI se hizo constar que los Apelantes no presentaron evidencia de la presunta mala fe desplegada por Franklin Credit. Más bien, se demostró el descontento con la alternativa de mitigación de pérdidas ofrecida. Sobre este respecto, debemos enfatizar que de dicha determinación los Apelantes recurrieron ante este Tribunal de Apelaciones y en aquella ocasión, un panel hermano determinó que el foro apelado no incurrió en perjuicio o parcialidad ni cometió un error de derecho. Siendo ello así, la controversia relacionada a la buena o mala fe de Franklin Credit durante el proceso de mediación quedó adjudicada y es final y firme. **Sobre este respecto, debemos enfatizar en que hemos revisado la transcripción de la prueba oral de la vista evidenciaria celebrada y coincidimos en que los Apelantes no probaron su alegación de inexistencia de buena fe durante la mediación**.

Así pues, al haberse determinado que se cumplió con el requisito de buena fe en el proceso de mediación compulsoria, es forzoso concluir que el foro primario no erró en su disposición del caso por la vía sumaria, pues en el expediente existe evidencia que respalda tal disposición.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones